RODRIGO E. SALAS (SBN 194462)
rsalas@shb.com
AUBREY KRAMER (SBN 359426)
akramer@shb.com
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: 415.544.1900 | Fax: 415.391.0281

KEVIN M. FITCH (SBN 356190)
kmfitch@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: 424.285.8330 | Fax: 424.204.9093

*For e-service include: eservice@shb.com*

Attorneys for Defendant
GENERAL MOTORS LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUIS CRUZ MEJIA, an individual, and HOLBEI PEDRAZA TINOCO, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>GENERAL MOTORS, LLC, a Delaware Limited Liability Company, and DOES 1 – 10, inclusive,<br><br>Defendant. | Case No. 8:26-cv-00631-MRA-KES<br><br>Judge: Hon. Monica Ramirez Almadani<br><br>**DEFENDANT GENERAL MOTORS LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**<br><br>Hearing Date: June 23, 2026<br>Time: 10:00 a.m.<br>Courtroom: 9B<br><br>Complaint Filed: November 17, 2025<br>Removal: March 20, 2026 |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ON *GAUS V. MILES* .....1

INTRODUCTION .....2

BACKGROUND FACTS .....4

A. Allegations Relevant to Diversity Jurisdiction .....4

ARGUMENT .....5

I. LEGAL STANDARDS .....7

A. Timeliness of Removal Under 28 U.S.C. § 1446(b) .....7

B. Plaintiff's Burden to Prove Procedural Defect .....8

C. Removing Defendant's Burden to Prove Subject Matter Jurisdiction 10

II. WELL-REASONED DECISIONS APPLYING CIRCUIT PRECEDENT HAVE REJECTED IDENTICAL UNTIMELINESS ARGUMENTS BY PLAINTIFF'S AND HELD SIMILAR GM REMOVALS TO BE TIMELY. 10

III. GM'S DEADLINE TO REMOVE UNDER 28 U.S.C. § 1446(b)(1) HAS NOT BEEN TRIGGERED AS TO DIVERSITY JURISDICTION .....12

A. Plaintiff's Citizenship Is Indeterminate from the Complaint .....12

B. The $75,000 Amount in Controversy Is Indeterminate .....13

1. Actual Damages .....13

2. Civil Penalties .....15

3. Attorney's Fees .....15

IV. A PREPONDERANCE OF THE EVIDENCE SHOWS THAT THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 .....16

1. Actual Damages .....16

2. Civil Penalties .....17

3. Attorney's Fees .....18

CONCLUSION .....19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abel Borrayo, et al. v. Gen. Motors LLC, et al*, No. 5:25-02384-KK-MAR, 2025 WL 3034062 (C.D. Cal. Oct. 30, 2025) ........ 12

*Amavizca v. Nissan N. Am., Inc*., No. ED-CV-22-02256-JA-KKK, 2023 WL 3020489 (C.D. Cal. Apr. 19, 2023) ........ 14

*and Alvarez v. General Motors LLC*, No. 5:25-cv-01955-MCS-MAA, 2025 WL 2591529 (C.D. Cal. Sept. 8, 2025) ........ 18

*Arias v. Residence Inn*, 936 F.3d 920 (9th Cir. 2019) ........ 17

*Avina v. Ford Motor Co.*, No. CV 23-10573 PA (Ex), 2024 WL 688664 (C.D. Cal. Feb. 20, 2024) ........ 5

*Blumberger v. Tilley*, 115 F.4th 1113 (9th Cir. 2024) ........ 8

*Boggs v. Lewis*, 863 F.2d 662 (9th Cir.1988) ........ 1

*Breuer v. Jim's Concrete of Brevard, Inc*., 538 U.S. 691 (2003) ........ 1, 8

*Brinkley v. Monterey Fin. Servs., Inc*., No. 16CV1103-WQH, 2016 WL 4886934 (S.D. Cal. Sept. 15, 2016) ........ 13

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010) ........ 2, 15

*Cesena v. Gen. Motors LLC*, No. 2:25-cv-07225-DSF-JPR, 2025 WL 3002616 (C.D. Cal. Oct. 24, 2025) ........ 8

*Chavarin v. Gen. Motors LLC*,
No. 2:25-cv-06852-HDV-MBK, Dkt. 28, 2025 U.S. Dist. LEXIS 214175 (C.D. Cal. Oct. 29, 2025)....10, 11

*Cioffi v. Solomon*,
No. C-14-04139-RMW, 2014 WL 6679555 (N.D. Cal. Nov. 21, 2014)....13

*Covarrubias v. Ford Motor Co.*,
2:25-cv-00328-JLS-MAA, 2025 WL 907544 (C.D. Cal., Mar. 24, 2025)....15

*Crisp-Stoot v. Wal-Mart Stores, Inc.*,
No. CV-18-10694-PSG-PJWX, 2019 WL 1307735 (C.D. Cal. Mar. 22, 2019)....13

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014)....9

*Dietrich v. Boeing Co.*,
14 F.4th 1089 (9th Cir. 2021)....1, 6, 7, 9

*Ehrman v. Cox Communs., Inc.*,
932 F.3d 1223 (9th Cir. 2019)....16

*Fortune v. Gen. Motors, LLC*,
No. CV 25-7300-JFW(JCX), 2025 WL 2866659 (C.D. Cal. Oct. 7, 2025)....10, 11, 12

*Franklin v. HealthSource Glob. Staffing, Inc. et al.*,
No. 23-CV-0662-AGS-DEB, 2024 WL 1055996 (S.D. Cal. Mar. 11, 2024)....5

*Fritsch v. Switch Transp. Co. of Az., LLC*,
899 F.3d 785 (9th Cir. 2018.)....16, 18

*Garibay v. General Motors LLC*,
No. 2:25-cv-6857-SB-PVC, 2025 WL 2638522 (C.D. Cal. Sept. 12, 2025)....18

*Gaus. Destfino v. Reiswig*,
630 F. 3d 952 (9th Cir. 2011)....9

*Gaus v. Miles, Inc.*,
980 F.2d 564 (9th Cir. 1992)....1, 8

*Gonzalez v. General Motors LLC*,
No. 2:25-cv-07044-MCS-AS, 2025 WL 2591432 (C.D. Cal. Sept. 8, 2025) .......... 18

*Guglielmino v. McKee Foods Corp.*,
506 F.3d 696 (9th Cir. 2007) .......... 1, 2, 10, 16

*Harris v. Bankers Life & Cas. Co*
425 F.3d 689 (9th Cir. 2005) .......... *passim*

*John Roubos III, et al. v. Gen. Motors LLC, et al*,
No. 2:25-07631-GW-AS, 2025 WL 3033983 (C.D. Cal. Oct. 30, 2025) .......... 12

*Kanter v. Warner-Lambert Co.*,
265 F.3d 853 (9th Cir. 2001) .......... 12

*Kenny v. Wal-Mart Stores, Inc.*,
881 F.3d 786 (9th Cir. 2018) .......... 8

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
707 F.3d 1136 (9th Cir. 2013) .......... *passim*

*Ladelle Dewann Jackson v. General Motors LLC et al.*,
No. CV-25-7021-JFW(ASx) (C.D. Cal. Oct. 2, 2025) .......... 2

*Larch-Miller v. General Motors LLC et al*,
No. CV-25-8469-JFW(BFMx) (C.D. Cal. Oct. 30, 2025) .......... 2

*Libhart v. Santa Monica Dairy Co.*,
592 F.2d 1062 (9th Cir. 1979) .......... 1

*Lopez v. Gen. Motors, LLC*,
No. CV 25-06549-MWF(MAAx), 2025 WL 2629545 (C.D. Cal. Sept. 11, 2025) .......... 11, 14

*Maalouf v. Villagrana Logistics, Inc.*,
Case No. 2:25-cv-07625-MRA-DFM, 2026 WL 212950 (C.D. Cal. Jan. 27, 2026) .......... 6

*Maria Elizabeth Lopez v. Gen. Motors, LLC et al*,
No. CV-25-7094-MWF, 2025 WL 2976913 (C.D. Cal. Oct. 22, 2025) .......... 12

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) .......... 1

*Moreno Enciso*, No. 2:25-CV-07530-WLH-MBK, 2025 WL 2976611(C.D. Cal. Oct. 22, 2025) ........ 12

*Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013) ........ *passim*

*Rozas v. Mercedes-Benz USA, LLC*, No. 2:24-CV-08417-JLS-AGR, 2025 WL 37691 (C.D. Cal. Jan. 6, 2025) ........ 15

*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996) ........ 1

*Sandoval v. GM LLC*, No. 2:25-cv-06551-DSF-SSC, 2025 U.S. Dist. LEXIS 195478 (C.D. Cal. Sept. 15, 2025) ........ 19

*Schneider v. Ford*, 756 Fed. App'x. 699 (9th Cir. 2018) ........ 14, 17

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) ........ 1

*Smith v. Mylan Inc.*, 761 F.3d 1042 (9th Cir. 2014) ........ 8

*Stewart, et al. v. Gen. Motors LLC*, No. 2:25-cv-07153-SPG-MAA, Dkt. 18, 2025 WL 2848991 (C.D. Cal. Oct 7, 2025) ........ 11

*Stupin v. Gen. Motors LLC*, No. 2:23-cv-06943-SVW-MAA, 2024 WL 811706 (C.D. Cal. Feb. 27, 2024) ........ 13

*Takeda v. Nw. Nat. Life Ins. Co.*, 765 F.2d 815 (9th Cir. 1985) ........ 1

*Tandoc v. U.S. Renal Care, Inc.*, No. 25-cv-2515 PA-AJRX, 2025 WL 1397193 (C.D. Cal. May 14, 2025) ........ 13

*Torres v. Gen. Motors LLC*, No. 2:25-CV-06820-SPG-AGR, 2025 WL 2848989 (C.D. Cal. Oct. 7, 2025.) ........ 12

*Tutunik v. Mercedes-Benz USA, LLC*,
No. 2:25-CV-01235-JLS-ADS, 2025 WL 1843229 (C.D. Cal. Mar. 28, 2025) .......... 14

*Vasquez v. Nissan N. Am., Inc.*,
No. 2:24-cv-00302-GW-E, 2024 WL 4452776 (C.D. Cal. Mar. 7, 2024) .......... 9

*Watanabe, et al. v. Gen. Motors LLC*,
No. 2:25-cv-07006-SPG-E Dkt. 22, 2025 WL 2848993 (C.D. Cal. Oct. 7, 2025) .......... 11

*Wecker v. National Enameling & Stamping Co.*,
204 U.S. 176 (1907) .......... 9

*Woods v. Ford Motor Co.*,
No. 5:24-cv-01594-MWF-PVC, 2024 WL 4709973 (C.D. Cal. Nov. 7, 2024) .......... 15

**California Cases**

*Santana v. FCA US, LLC* (2020)
56 Cal.App.5th 334 .......... 17

*Towns et al. v. Hyundai Motor Am.* (2025)
117 Cal.App.5th 958 .......... 17

**Other State Cases**

*Brady v. Kohl's, Inc.*,
No. LA-CV-2203427-SPG-PD, 2022 WL 4104627 (C.D. Cal. Sept. 7, 2022) .......... 13

*Tran v. Hyundai Motor Am.*,
No. 24STCV21328 (L.A. Super. Ct. September 22, 2025) .......... 18

**Federal Statutes**

28 U.S.C.
§ 1332(a) .......... 12
§ 1441 .......... 1, 7
§ 1446 .......... 3, 7
§ 1446(b) .......... *passim*
§ 1446(b)(1) .......... *passim*
§ 1446(b)(3) .......... 6, 7

Song-Beverly Act ........................................ *passim*

**California Statutes**

Cal. Civ. Code
§ 1793.2 ........................................ 14
§ 1793.2(d)(2)(B)-(C) ........................................ 13

Cal. Code Civ. Proc.
§ 871.27(c) ........................................ 14

California Code of Civil Procedure
§ 871.27 ........................................ 4, 14, 16

## PRELIMINARY STATEMENT ON *GAUS v. MILES*

Plaintiffs' reliance on *Gaus v. Miles, Inc*., 980 F.2d 564 (9th Cir. 1992) for the proposition that removal statutes must be strictly construed against removal when considering procedural exceptions like timeliness is misplaced. The Supreme Court clarified in *Breuer v. Jim's Concrete of Brevard, Inc*., 538 U.S. 691, 697–98 (2003), that strict construction applies only to questions of original federal jurisdiction, not to procedural exceptions created by Congress (which include removal timing rules). *Gaus* and similar cases all trace their strict construction statements to *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941),[1] and *Breuer* specifically held that *Shamrock*'s interpretation of the then-operative removal statute was superseded by 28 U.S.C. § 1441. *Breuer*, 538 U.S. at 697-98. Furthermore, after *Gaus* the Ninth Circuit made clear in subsequent decisions (*Harris*, *Roth, Kuxhausen* and *Dietrich*) that doubts as to whether the 30-day removal window was triggered must be resolved in defendant's favor.

Further, Plaintiffs' assertion that the burden to show subject matter jurisdiction is a "heavy one" is wrong. While the "strict presumption against removal" under *Gaus* may mean that the removing defendant bears an initial burden of production, it does not affect the magnitude of that burden—which is to only show "more likely than not" that subject matter jurisdiction exists. *See Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 403 (9th Cir. 1996) (*Gaus* means that "defendant bears the burden of actually proving the facts to support jurisdiction" but "preponderance of the evidence" is the measure of that burden.) And later, in *Guglielmino v. McKee Foods Corp.*, 506 F.3d

[1] *Gaus* relied on three cases for its paragraph on strict construction, and all three of those cases trace back to *Shamrock*. *See Gaus*, 980 F.2d at 566 (citing *Libhart v. Santa Monica Dairy Co*., 592 F.2d 1062, 1064 (9th Cir. 1979); *Takeda v. Nw. Nat. Life Ins. Co*., 765 F.2d 815, 818 (9th Cir. 1985); *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir.1988)). *Libhart* relied on *Shamrock*; *Takeda* relied on *Shamrock* and *Libhart*; and *Boggs* relied on *Takeda*. And notwithstanding that the Ninth Circuit has not yet affirmatively recognized that *Breuer* is irreconcilable with the *Gaus* presumption, this Court must follow *Breuer*. *See, e.g.*, *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (explaining that district court is bound by intervening Supreme Court authority where it is clearly irreconcilable with prior circuit precedent).

696 (9th Cir. 2007), this Circuit affirmed the district court's finding that defendant's evidence of the amount in controversy was sufficient to establish diversity jurisdiction even though "it could not be certain that plaintiffs would recover *any* attorneys' fees or punitive damages." *Id.,* at 698 (emphasis in original.) In other words, despite *Gaus's* suggestion that "any doubt as to the right of removal" must be resolved in favor of remand, the Ninth Circuit has twice affirmed that some doubt is acceptable, if subject matter jurisdiction is "more likely than not."

## INTRODUCTION

Courts in this circuit have repeatedly told Plaintiffs' counsel that their motions to remand are fatally defective. *See, e.g., Larch-Miller v. General Motors LLC et al,* No. CV-25-8469-JFW(BFMx) (C.D. Cal. Oct. 30, 2025) at Dkt. 24 (Order Denying Plaintiff's Motion to Remand); *Ladelle Dewann Jackson v. General Motors LLC et al.*, No. CV-25-7021-JFW(ASx) (C.D. Cal. Oct. 2, 2025) at Dkt. 20 (Order Denying Plaintiff's Motion to Remand.) This Motion is no different.

Most troubling in Plaintiffs' Motion are Plaintiffs' wholly contradictory arguments that: (1) it should have been obvious that the amount in controversy *does* exceed $75,000 so removal was procedurally untimely and defective, and (2) it is obvious that the amount in controversy does *not* exceed $75,000 and so the case should be remanded for lack of subject matter jurisdiction. This type of "heads I win, tails you lose" gamesmanship highlights the reasons why the Ninth Circuit places the burden on Plaintiffs' to prove procedural untimeliness by, among other things, requiring Plaintiffs' to point to a document *Plaintiffs* served that clearly and unequivocally provides all the facts necessary to trigger a removal deadline. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 886 (9th Cir. 2010) (concluding that pre-complaint documents received by defendant are irrelevant to both 30-day triggers under § 1446(b)). Instead, Plaintiffs attempt to shift the procedural timeliness burden onto GM.

Plaintiffs' procedural argument fails under a straightforward application of this Circuit's holdings in *Harris v. Bankers Life & Cas. Co* 425 F.3d 689, 697 (9th Cir. 2005), *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013), and *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013). The Complaint contains no values from which GM or the Court can determine whether the amount in controversy threshold is met. And Plaintiffs' argument that the Sales Agreement by itself provided enough information to trigger the 30-day deadline is belied by precedent. GM's removal is therefore timely.

Recognizing that this fact is dispositive of their procedural argument, Plaintiffs' counsel attempts to argue in the alternate that GM cannot calculate the amount in controversy because it lacks the information necessary to do so. As noted, this is the exact gamesmanship that the Ninth Circuit's bright line approach to triggering the removal deadlines under 28 U.S.C. § 1446 was designed to prevent.

In the 2007 *Harris* case, the Ninth Circuit first adopted the "bright-line approach" to evaluating whether a removing defendant's time to remove under 28 U.S.C. § 1446(b)(1) had been triggered—holding that the complaint must be unambiguous as to subject matter jurisdiction within its four corners. *Harris*, 425 F.3d at 697. The approach was motivated by multiple policy concerns. **First**, "objective analysis of the pleadings brings certainty and predictability to the process and avoids gamesmanship in pleadings." *Id.* **Second**, to avoid "the spectre of inevitable collateral litigation over whether the pleadings contained a sufficient clue, whether defendant had subjective knowledge, or whether defendant conducted a sufficient inquiry." *Id.* **Third**, to mitigate the Catch-22 concern that "defendants may be encouraged to engage in premature removals in order to ensure that they do not waive their right to removal." *Id.* Six years later, the Ninth Circuit made clear that these policy concerns outweighed the risk for delay in removal, reasoning that plaintiffs should "assume the

costs associated with their own indeterminate pleadings." *Kuxhausen,* 707 F.3d at 1141.

Here, Plaintiffs' Motion makes clear that the Complaint was strategically drafted to be ambiguous as to jurisdictional facts. Plaintiffs' states that they are "residents" of California but omit their citizenship. As to the amount in controversy, Plaintiffs allege the model and year of the vehicle and seeks "remedies" under one or more of three formulas provided by the California Commercial Code, along with Song-Beverly remedies. But Plaintiffs do not allege that they seek more than $75,000 for his state law claims. Nor do they allege the values necessary to calculate his alleged damages. Plaintiffs' counsel has drafted a deliberately ambiguous complaint, hoping that they can trigger the removal deadline in some courts in this Circuit while preserving their ability to challenge subject matter jurisdiction in others. Those tactics are on full display here where Plaintiffs argue that GM's removal was both too late (because the Complaint and Sales Contract themselves prove the amount in controversy is met) and too early (because even with the Complaint and additional evidence, GM cannot yet prove the amount in controversy is met). This is the very Catch-22 that the Ninth Circuit intended *Harris* to avoid. The court should reject Plaintiffs' gamesmanship and deny their motion.

## BACKGROUND FACTS

On or around May 27, 2023, Plaintiffs purchased a 2022 GMC Sierra 1500. Compl. (Dkt. 1-1), ¶¶ 6, 9. Plaintiffs allege that the vehicle was defective and GM failed to fulfill its warranty obligations. Compl. ¶¶ 11, 12, 14. Plaintiffs assert claims arising under the Song-Beverly Act. *See generally* Compl.

### A. Allegations Relevant to Diversity Jurisdiction

Plaintiffs' Complaint was filed after the January 1, 2025, operative date of California Assembly Bill 1755. Enacted as California Code of Civil Procedure section 871.27, AB 1755 provides the formula for calculating actual damages where, in

addition to identifying and deducting a mileage offset, the following items are deducted from the paid and payable: negative equity; rebates; non-dealer supplied third party equipment or services; and unpaid financing and interest.

Plaintiffs' Complaint alleges the make, model, and year of the subject vehicle, but does not allege the purchase price, nor any other dollar amounts for statutorily required deductions. The mileage offset calculation is specifically obscured because Plaintiffs' makes a generic "include but are not limited to" defect allegation (Compl., ¶ 12), creating ambiguity as to which repair presentations, if identified by Plaintiffs, would be relevant, leaving GM to decipher a trail of clues.

Plaintiffs also seek a civil penalty of up to two times actual damages under the Song-Beverly Act. Compl. ¶¶ 17, 24, 28, and Prayer for Relief (c). But Plaintiffs do not quantify "actual" damages or the amount of civil penalties damages sought.

As to citizenship, Plaintiffs are alleged to be residents (but not citizens) of California. Compl. ¶ 2.

## ARGUMENT

This Court has already applied the correct analysis in analogous situations where Plaintiffs are challenging removal on timeliness grounds:

> With respect to the timing of removal, "[t]here are two different potential . . . deadlines." *Franklin v. HealthSource Glob. Staffing, Inc. et al.*, No. 23-CV-0662-AGS-DEB, 2024 WL 1055996, at *2 (S.D. Cal. Mar. 11, 2024). The first potential deadline is triggered if an initial pleading "affirmatively reveals on its face the facts necessary for federal court jurisdiction." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 691 (9th Cir. 2005); *see also* 28 U.S.C. § 1446(b)(1). "If an initial pleading is not removable on its face, then the first 30-day period for removal is not triggered." *Avina v. Ford Motor Co.*, No. CV 23-10573 PA (Ex), 2024 WL 688664, at *2 (C.D. Cal. Feb. 20, 2024). The second potential deadline for removal is triggered after

> "the defendant receives 'an amended pleading, motion, order or other paper' from which it can be ascertained from the face of the document that removal is proper." *Harris*, 425 F.3d at 694 (quoting 28 U.S.C. § 1446(b)(3)). Beyond those two deadlines, a defendant may remove a case where it "could have ventured beyond the pleadings to demonstrate removability initially[.]" *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 n.3 (9th Cir. 2013) (internal quotation marks omitted). However, it is not "obligated to do so." *Id.* In *Kuxhausen*, the Ninth Circuit explained that **a defendant is not obligated to "look[] in its files within the first thirty days" after a case is filed to determine removability because the court preferred a "clear rule" and was "unwilling to embroil the courts in inquiries into the subjective knowledge of [a] defendant[.]**'" *Id.* at 1141 (quoting *Harris*, 425 F.3d at 696). Therefore, in *Kuxhausen*, the court "decline[d] to hold that materials outside the complaint start the thirty-day clock." *Id.*

*Maalouf v. Villagrana Logistics, Inc.*, Case No. 2:25-cv-07625-MRA-DFM, 2026 WL 212950 *5-6 (C.D. Cal. Jan. 27, 2026) (emphasis added). The Court need not stray from this analysis here.

As a threshold matter, Plaintiffs' confuse the plausibility standard by which a notice of removal is assessed with the standard to trigger the 30-day deadline under 28 U.S.C. § 1446(b)(1). Indeed, Plaintiffs' argument ignores the legal standard articulated in *Harris* and *Kuxhausen*—providing that a complaint does not trigger a defendant's duty to remove under 28 U.S.C. § 1446(b) unless subject matter jurisdiction is "determinate" within the four corners of the complaint. Plaintiffs then improperly equates facts that may allow removal with facts sufficient to require removal. *Dietrich*, 14 F.4th at 1094 (reversing remand order where "the district court equat[ed] facts sufficient to allow removal with facts sufficient to *require* removal within thirty days.")

Under a straightforward application of *Harris* and *Kuxhausen*, the Complaint did not trigger the 30-day deadline to remove under 28 U.S.C. § 1446(b)(1). And Plaintiffs' argument that it served an "other paper" that triggered the deadline to remove under 28 U.S.C. § 1446(b)(3) is incorrect, since the Sales Agreement did *not* provide all of the values necessary to make the amount in controversy "unequivocally clear and certain." (*Id.,* at 1094.) Therefore, removal was timely because GM removed this case based on its own investigation which concluded 30 days prior to removal.

GM has produced evidence that establishes the amount in controversy exceeds $75,000.

## I. LEGAL STANDARDS

### A. Timeliness of Removal Under 28 U.S.C. § 1446(b)

The Ninth Circuit has explained there are three potential procedural pathways for removal of an action from state court. *See Roth*, 720 F.3d at 1124. The first two pathways are in 28 U.S.C. § 1446(b) and impose 30-day deadlines for removal. *See Dietrich v. Boeing Co*., 14 F.4th 1089, 1093 (9th Cir. 2021). The third pathway is based on reading 28 U.S.C. § 1446 together with 28 U.S.C. § 1441 and permits removal subject to diversity jurisdiction at any time, so long a s neither 30-day deadline was triggered and then lapsed. *See Roth*, 720 F.3d at 1125-26. For this third pathway, Circuit precedent is clear that this can occur at any time based on a defendant's own investigation and defendant does not have to identify a specific trigger. *Id*.

In interpreting whether either 30-day deadline has been triggered, the Ninth Circuit adopted a "bright-line approach," to ensure "certainty and predictability." *Harris*, 425 F.3d at 697 ("[A]n objective baseline rule avoids the spectre of inevitable collateral litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry."); *Dietrich*, 14 F.4th at 1094 ("We also believe the unequivocally clear and certain standard will solidify the jurisdictional and procedural interests we developed in

*Harris*."); *see also Blumberger v. Tilley*, 115 F.4th 1113, 1122 (9th Cir. 2024) ("[The unequivocally clear and certain standard] is a high bar, for good reason. It avoids bad-faith gamesmanship by preventing plaintiffs from strategically starting the removal clock without the defendants' realization.").

The Ninth Circuit added two additional points in *Roth*. First, the triggering "other paper" must be served by the Plaintiffs. *Roth*, 720 F.3d at 1126. Second, if neither 30-day deadline is triggered, then they are irrelevant to the timeliness of removal. *Roth*, 720 F.3d at 1125 (holding that defendant is permitted to "remove outside the two thirty-day periods on the basis of its own information, provided it has not run afoul of either of the thirty-day deadlines."). In other words, Plaintiffs' position that GM must point to an "other paper" to support timeliness is wrong. *Cesena v. Gen. Motors LLC*, No. 2:25-cv-07225-DSF-JPR, 2025 WL 3002616, at *2 (C.D. Cal. Oct. 24, 2025) ("As long as the complaint or an amended pleading, motion, order or other paper does not reveal that the case is removable, a defendant, in effect, may remove at any time.") (quoting *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018)).

### B. Plaintiff's Burden to Prove Procedural Defect

It is Plaintiffs' burden to timely present and establish any procedural challenge to removal. *Breuer*, 538 U.S. at 698 ("Since 1948, [] there has been no question that whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff's to find an express exception."); *Smith v. Mylan Inc.*, 761 F.3d 1042, 1044-45 (9th Cir. 2014) (30 day and 1 year limits on removal "are procedural . . . rather than jurisdictional" and plaintiff bears the burden to show remand is proper).

As noted, Plaintiffs' reliance on the anti-removal presumption stated in *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) is unwarranted. First, *Gaus* involved a challenge to subject matter jurisdiction, not a procedural challenge as is presented here. Second, *Breuer* and *Mylan, Inc.* make clear that *Gaus* cannot be applied to a procedural challenge. Both decisions place the burden on the Plaintiffs to prove that removal was

procedurally defective. The Ninth Circuit has further recognized that the presumption against removal was relaxed after *Gaus*. *Destfino v. Reiswig*, 630 F. 3d 952 (9th Cir. 2011) (liberally construing removal statute to adopt Ninth Circuit rule allowing each later-served defendant the right to remove because it was the "wiser and more equitable approach"). Indeed, a defendant's right to be heard in federal court is at least as important as the plaintiff's right to the forum of his choice and federal courts "should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).

Plaintiffs are also wrong to equate the standard for evaluating a notice of removal under *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) with the standard to trigger the 30-day deadlines under 28 U.S.C. § 1446(b). The latter standard is distinct from—and more demanding than—the standard of proof imposed on a removing defendant. *Kuxhausen*, 707 F.3d at 1141, n. 3 ("Whether a defendant can establish that federal jurisdiction exists and the question of when the thirty-day time period begins are not two sides of the same coin."); *Dietrich*, 14 F.4th at 1094 ("[W]e concluded that a defendant *may* remove before it *must* do so."); *see also Vasquez v. Nissan N. Am., Inc.*, No. 2:24-cv-00302-GW-E, 2024 WL 4452776 at *2 (C.D. Cal. Mar. 7, 2024) ("*Dart* had no impact whatsoever on the *Harris* rule[.]").

For application of these principles, the facts in *Kuxhausen* are instructive. In *Kuxhausen*, the Ninth Circuit held that BMW's duty to remove was not triggered because the complaint did not allege the value of the vehicle financing contracts at issue. *Kuxhausen*, 707 F.3d at 1140-41. While the court recognized that BMW had subjective knowledge of the value of the vehicles at issue, the court explained that "BMW was not obligated to supply information which [the plaintiff] had omitted." *Id*. In doing so, the court restated the guiding principle: that the court should "decline to hold materials

outside the complaint" sufficient to start the thirty-day clock, less the district courts be "embroiled" in "inquiries into the subjective knowledge of defendant." *Id.*

**C. Removing Defendant's Burden to Prove Subject Matter Jurisdiction**

As Plaintiffs concede, in direct contradiction to their previous argument, the Complaint is indeterminate as to the amount in controversy. Accordingly, in response to Plaintiffs' challenge to the amount in controversy, GM's must show by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Guglielmino*, 506 F.3d at 699.

**II. <u>WELL-REASONED DECISIONS APPLYING CIRCUIT PRECEDENT HAVE REJECTED IDENTICAL UNTIMELINESS ARGUMENTS BY PLAINTIFF'S AND HELD SIMILAR GM REMOVALS TO BE TIMELY.</u>**

Plaintiffs' counsel here has filed a motion to remand in nearly every case that GM has removed in recent months. It does not matter when GM removes, nor does it matter how much is in controversy— Plaintiffs' counsel will deliver a motion to remand. *See, e.g.*, *Fortune v. Gen. Motors, LLC*, No. CV 25-7300-JFW(JCX), 2025 WL 2866659, at *4, n.1 (C.D. Cal. Oct. 7, 2025) (recognizing plaintiff's same contrary position that the complaint is both determinate as to the amount in controversy and that the amount in controversy is too speculative.) This is exactly the cottage industry of removal litigation that the *Harris* bright-line approach was intended to prevent.

While courts have taken multiple approaches in interpreting Circuit precedent as it relates to the timing of removals, GM notes a growing body of well-reasoned decisions which adhere to this Circuit's bright-line standard, reject identical arguments from Plaintiffs' counsel, and find GM's removals timely under the third removal pathway articulated in *Roth*:

- *Chavarin v. Gen. Motors LLC*, No. 2:25-cv-06852-HDV-MBK, Dkt. 28, 2025 U.S. Dist. LEXIS 214175 (C.D. Cal. Oct. 29, 2025): the Honorable Hernán D. Vera rejected arguments that a nearly identical complaint triggered the 30-day

deadline to remove. First, the court found that the complaint did not contain any allegations as to the dollar amount in controversy. *Id.,* at *6-7. Second, the court found that the complaint's residency allegations "do not set forth Plaintiff's domicile or citizenship." *Id.,* at *7. Further, unlike for Song Beverly, the amount in controversy for plaintiff's MMWA claims was not "unequivocally clear and certain" because plaintiff had not provided the necessary values to calculate MMWA damages under any UCC measure sought by the plaintiff in the Complaint. *Id.,* at *10. Accordingly, the court found GM's removal timely because it had not run afoul of either 30-day deadline under §1446(b). *Id.,* at *12.

- *Stewart, et al. v. Gen. Motors LLC*, No. 2:25-cv-07153-SPG-MAA, Dkt. 18, 2025 WL 2848991 (C.D. Cal. Oct 7, 2025): the Honorable Sherilyn Peace Garnett rejected almost identical arguments and made clear that almost identical complaints did not trigger the 30-day deadline. Further, later service of a sales contract did not meet the "unequivocally clear and certain" standard to trigger a 30-day deadline, because statutory deductions remained ambiguous. Accordingly, removal based on GM's own investigation was timely. *Id.,* at *3-4.
- *Watanabe, et al. v. Gen. Motors LLC*, No. 2:25-cv-07006-SPG-E Dkt. 22, 2025 WL 2848993 (C.D. Cal. Oct. 7, 2025) (same as above).
- *Lopez v. Gen. Motors, LLC*, No. CV 25-06549-MWF(MAAx), 2025 WL 2629545 (C.D. Cal. Sept. 11, 2025): the Honorable Michael W. Fitzgerald similarly denied remand in relation to an almost identical complaint, even after service of some repair orders and the sales contract because "Defendant could not have calculated the unpaid financing offset without the loan payment history." *Id.,* at *3.
- *Fortune v. Gen. Motors, LLC,* No. CV 25-7300-JFW(JCX), 2025 WL 2866659 (C.D. Cal. Oct. 7, 2025), which held both that an almost identical complaint did not trigger a 30 day deadline, and rejected Plaintiff's contradictory argument that

the amount in controversy was not met, and noted that "[t]his argument appears to run directly contrary to their argument that it was clear from the face of their Complaint that the amount in controversy exceeded the jurisdictional threshold." 2025 WL 2866659, at *2, n.1.

- Numerous other cases have reached the same result after analysis of similar complaints. *See, e.g., Abel Borrayo, et al. v. Gen. Motors LLC, et al*, No. 5:25-02384-KK-MAR, 2025 WL 3034062, at *4 (C.D. Cal. Oct. 30, 2025); *Nohemi Moreno Enciso*, No. 2:25-CV-07530-WLH-MBK, 2025 WL 2976611, at *5 (C.D. Cal. Oct. 22, 2025); *John Roubos III, et al. v. Gen. Motors LLC, et al*, No. 2:25-07631-GW-AS, 2025 WL 3033983, at *2 (C.D. Cal. Oct. 30, 2025); *Maria Elizabeth Lopez v. Gen. Motors, LLC et al*, No. CV-25-7094-MWF (MARX), 2025 WL 2976913, at *4 (C.D. Cal. Oct. 22, 2025); *Torres v. Gen. Motors LLC*, No. 2:25-CV-06820-SPG-AGR, 2025 WL 2848989 (C.D. Cal. Oct. 7, 2025.)

## III. GM'S DEADLINE TO REMOVE UNDER 28 U.S.C. § 1446(b)(1) HAS NOT BEEN TRIGGERED AS TO DIVERSITY JURISDICTION

Generally, a court has diversity jurisdiction only when there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

### A. Plaintiffs' Citizenship Is Indeterminate from the Complaint

"A person's domicile is their permanent home, where they reside with the intention to remain or to which they intend to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person residing in a given state is not necessarily domiciled there and thus is not necessarily a citizen of that state." *Id*; *see also Harris*, 425 F.3d at 695–96 (complaint that only alleged residence did not reveal citizenship "as of the filing of the complaint.")

While district courts differ on whether residency allegations are sufficient to trigger the 30-day window when all other jurisdictional facts are present in the

complaint, GM notes Judge Philip Gutierrez's thorough analysis, holding Circuit precedent requires more than residency to be alleged, and that decisions ruling otherwise primarily traced their roots to out of circuit authority. *Crisp-Stoot v. Wal-Mart Stores, Inc*., No. CV-18-10694-PSG-PJWX, 2019 WL 1307735, at *2–4 (C.D. Cal. Mar. 22, 2019). Many other district courts have similarly applied Circuit precedent to find the 30-day removal window is not triggered by residency allegations. *See, e.g., Brady v. Kohl's, Inc*., No. LA-CV-2203427-SPG-PD, 2022 WL 4104627, at *2 (C.D. Cal. Sept. 7, 2022) *Cioffi v. Solomon*, No. C-14-04139-RMW, 2014 WL 6679555, at *2 (N.D. Cal. Nov. 21, 2014); *Tandoc v. U.S. Renal Care, Inc*., No. 25-cv-2515 PA-AJRX, 2025 WL 1397193, at *3 (C.D. Cal. May 14, 2025); *Brinkley v. Monterey Fin. Servs., Inc*., No. 16CV1103-WQH, 2016 WL 4886934, at *3 (S.D. Cal. Sept. 15, 2016).

Here, Plaintiffs' Complaint states they reside in California but is silent on their intent to remain or their California citizenship. Compl., ¶ 2. Accordingly, the Complaint was indeterminate as to complete diversity of citizenship and did not trigger the 30-day deadline to remove. *Crisp-Stoot*, 2019 WL 1307735, at *3.

**B. The $75,000 Amount in Controversy Is Indeterminate**

For their state law claims, Plaintiffs' seeks three categories of damages: (1) actual damages, (2) a civil penalty of up to two times actual damages, and (3) attorney's fees. Compl., at Prayer for Relief.

**1. Actual Damages**

A calculation of actual damages under the Song-Beverly Act requires a deduction of the value "directly attributable to use by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B)-(C). This "mileage offset" is derived by determining the first relevant repair, taking the number of miles driven before that, dividing by 120,000, and multiplying that figure by the cash price of the vehicle. *See Stupin v. Gen. Motors LLC*, No. 2:23-cv-06943-SVW-MAA, 2024 WL 811706, at *2 (C.D. Cal. Feb. 27, 2024) ("Neither party has provided sufficient information for the Court to use the [mileage

offset] formula included in the Song-Beverly Act to apply the Act's reduction."); *Schneider v. Ford*, 756 Fed. App'x. 699, 701, n.3 (9th Cir. 2018); *Cruz Lopez,* 2025 WL 2629545, at *10-11.

The following must also be considered in the amount in controversy calculus: negative equity (Cal. Code Civ. Proc. § 871.27(c)), manufacturer's rebate (*id.*, § 871.27(d)), any third party sold optional equipment (*id.*, § 871.27(b)), and unpaid financing (*id.*, § 871.26(f)). None of those are included or even discernable from the Sales Agreement.

GM acknowledges that a minority of district courts have applied a more liberal approach and do not consider offsets when assessing the amount in controversy based on the position that the offsets are defenses—but under the current statutory scheme, these are not defenses but rather the formula to determine actual damages. *See Amavizca v. Nissan N. Am., Inc.*, No. ED-CV-22-02256-JA-KKK, 2023 WL 3020489, at *5 (C.D. Cal. Apr. 19, 2023) (discussing Ninth Circuit authority requiring deductions, and concluding that Song-Beverly mileage offsets[2] must be considered as they are not a defense, but "part of the formula provided in Cal. Civ. Code § 1793.2 for the computation of damages.").

Two reasons lend support for this Court to agree with GM's position here: first, as set forth above, this case falls under the **new** Song-Beverly scheme; and second, Plaintiffs' Complaint specifically seeks "actual" damages under the Song-Beverly Act, meaning the paid and payable *minus* offsets. *See Tutunik v. Mercedes-Benz USA, LLC*, No. 2:25-CV-01235-JLS-ADS, 2025 WL 1843229, at *2 (C.D. Cal. Mar. 28, 2025) (where specific rule of law like mileage offset limits the amount of damages recoverable, it must be considered to determine "actual" damages).

Here, the Complaint is indeterminate as to actual damages because it does not provide any values from which actual damages can be calculated. To the extent

[2] The *Amavisca* complaint was filed before January 1, 2025, before § 871.27 took effect.

Plaintiffs suggest that documents in GM's possession (but not served by Plaintiffs) filled in the gaps as to the amount in controversy, those documents are irrelevant to the analysis under 1446(b). *Kuxhausen*, 707 F.3d at 1140 ("BMW was not obligated to supply information which [the plaintiff] had omitted.") Equally irrelevant are documents allegedly served by Plaintiffs before the Complaint was filed. *Carvalho*, 629 F.3d at 886 (concluding that pre-complaint documents received by defendant are irrelevant to both 30-day triggers under § 1446(b)). In sum, the Complaint did *not* trigger the deadline to remove under 28 U.S.C. section 1446(b)(1).

**2. Civil Penalties**

Because the amount of actual damages is indeterminate, so too is the amount of civil penalties sought. *See, e.g., Woods v. Ford Motor Co.*, No. 5:24-cv-01594-MWF-PVC (PVCx), 2024 WL 4709973, at *2 (C.D. Cal. Nov. 7, 2024); *Rozas v. Mercedes-Benz USA, LLC*, No. 2:24-CV-08417-JLS-AGR, 2025 WL 37691, at *3 (C.D. Cal. Jan. 6, 2025) ("Because the amount of actual damages is speculative, any attempt to determine the civil penalty is equally uncertain.")

GM acknowledges district courts' discordant treatment of civil penalties, which raises yet another layer of uncertainty to GM's removal *ex ante*. *See Covarrubias v. Ford Motor Co.*, 2:25-cv-00328-JLS-MAA, 2025 WL 907544, at *6 (C.D. Cal., Mar. 24, 2025) ("The Court is mindful of the imbalance that would result from allowing a plaintiff's to start the removal clock with a complaint that fails to include allegations as [actual damages] and then argue in a motion to remand that a defendant's damages calculations are speculative[.]") Even though GM's position is that once actual damages are calculated, the maximum resulting civil penalties should be included in the AIC for Song-Beverly damages, it is far from "unequivocally clear and certain" that they will be in all courts in this district.

**3. Attorney's Fees**

Finally, Plaintiffs seek attorney's fees, which must be included in the AIC, but

does not allege the value of any such fees. *Fritsch v. Switch Transp. Co. of Az., LLC*, 899 F.3d 785, 794 (9th Cir. 2018.)

## IV. A PREPONDERANCE OF THE EVIDENCE SHOWS THAT THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

Since the Complaint is indeterminate as to the amount in controversy, GM produces evidence establishing the amount in controversy by a preponderance of the evidence. *See Guglielmino*, 506 F.3d at 699.

Plaintiffs have not challenged GM's citizenship allegations and no further evidence is required on this point. *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019) (finding that "no evidence was required" where neither the court nor plaintiff challenged complete diversity.)

As noted above, Plaintiffs' alleged three categories of remedies for their state law claims: (1) actual damages; (2) civil penalties; and (3) attorney's fees.

### 1. Actual Damages

Plaintiffs purchased a 2022 GMC Sierra 1500 with 87 miles on the odometer for $115,280.68. *See* Kramer Decl., Ex. A (RISC). In assessing the various vehicle complaints and what this case might potentially be based on, GM noted that on December 26, 2023, with 4,481 miles on the odometer, Plaintiffs presented the vehicle to a dealership for repair of the defect claim they appear to be pursuing here. Kramer Decl., ¶ 3, Ex. B (Repair History Summary). Plaintiffs' use of the Subject Vehicle prior to the discovery of this alleged nonconformity was 4,481 miles. Dividing this number by 120,000 and multiplying this by the agreed upon value of the Subject Vehicle—$81,142.14—results in an estimated mileage offset of $2,969.80. GM also identified a total of $974.00 in other offsets for optional third-party contracts. Kramer Decl., ¶ 2, Ex. A; Code Civ. Proc. § 871.27. Plaintiffs' payoff amount as of removal is approximately $45,666.23. And since GM determined that this case is unlikely to settle, GM may reasonably include another 12 months of $1,373.47 payments to cover the

period up to trial and any appeal. Kramer Decl. ¶ 4, Ex. C (Loan History). Accordingly, by a preponderance of the evidence, the "actual" damages at issue here are **$74,594.91.**[3]

### 2. Civil Penalties

Since GM determined the amount of "actual" damages, GM can also determine the amount of civil penalties at stake. Not only have Plaintiffs' stated that they are seeking civil penalties, but they specifically allege willfulness, as required for the imposition of civil penalties. Additionally, GM's investigation concluded that the Subject Vehicle was presented for repair at least 3 times. Kramer Decl., ¶ 3, Ex. B. Based on GM's counsel's prior experience, Plaintiffs pursue civil penalties when there are records of multiple repair presentations. Kramer Decl., ¶ 5. *See Arias v. Residence Inn*, 936 F.3d 920, 927 (9th Cir. 2019) (explaining that defendant need only show "reasonable grounds" for estimated damages). And when plaintiffs prevail at trial on Song-Beverly claims, they seek and are awarded civil penalties. *See, e.g., Santana v. FCA US, LLC* (2020) 56 Cal.App.5th 334, 344 (jury award of 2x civil penalties for Song-Beverly claims); *Towns et al. v. Hyundai Motor Am.*, (2025) 117 Cal.App.5th 958, 960 (same.)

GM may therefore reasonably assume that Plaintiffs will seek and be awarded the same civil penalties if he prevails at trial. *See Arias*, 936 F.3d at 922 ("[A] defendant's showing on the amount in controversy may rely on reasonable assumptions.") Adding the maximum civil penalties available as a matter of law brings the amount in controversy to **$223,784.73.** *See id.,* at 927. (maximum penalties should be included in amount in controversy where a "defendant has shown [the] potential recovery *could* exceed [the jurisdictional threshold] and the plaintiffs has [not] sought to establish that [] recovery is potentially any less[.]") (emphasis in original, quotation omitted).

---

[3] This number is more precise than the $ 112,310.88 estimate in the notice of removal. *See Schneider*, 756 Fed. Appx. 699, 700-701 (notice of removal only requires plausible estimates of offsets, which may be supplemented with additional evidence on challenge).

**3. Attorney's Fees**

The Ninth Circuit "[has] long held . . . that attorneys' fees awarded under fee-shifting statues [like the Song-Beverly Act] . . . are included in the amount in controversy." Fritsch, 899 F.3d at 794. But "[a] removing defendant" must "prov[e] future attorney's fees . . .with summary-judgment type evidence." *Id.,* at 795. GM has accordingly provided the court with examples of Plaintiff's counsel's rates and billing practices. *See Tran v. Hyundai Motor Am.*, No. 24STCV21328 (L.A. Super. Ct. September 22, 2025) at Dkt. 27 (Declaration of Michelle Yang ISO Motion for Attorney's Fees). Plaintiffs' counsel charge high hourly rates ($525 for Michelle Yang and $450 for Andrea Plata) for even routine litigation work, such as drafting moving papers and analyzing pleadings. *Id.* at Dkt. 34 (Final Order Re: Plaintiff's Motion for Attorney's Fees and Costs.) Plaintiffs' counsel sought $28,583.20 in fees in that case even though it settled in seven months and required only 28 hours of work. *Id*. The court noted that "[w]ithin weeks of filing, Plaintiff had effectively achieved the principal relief sought – a statutory repurchase – yet elected to continue litigating solely to expand the attorney's fees recovery." *Id*.

Plaintiffs' counsel has also billed nearly $3,000 for similar remand motions, even where they are nearly identical to dozens of other motions filed against auto manufacturers. *See Gonzalez v. General Motors LLC*, No. 2:25-cv-07044-MCS-AS, 2025 WL 2591432, at *2, n. 2 (C.D. Cal. Sept. 8, 2025); *compare Id.,* at Dkt. 14 (Plaintiffs' counsel's Motion to Remand with $2,826 fee demand) *with Garibay v. General Motors LLC*, No. 2:25-cv-6857-SB-PVC, 2025 WL 2638522 (C.D. Cal. Sept. 12, 2025) at Dkt. 22 (Plaintiffs' counsel's Motion to Remand with $3,289.50 fee demand) *and Alvarez v. General Motors LLC*, No. 5:25-cv-01955-MCS-MAA, 2025 WL 2591529 (C.D. Cal. Sept. 8, 2025) at Dkt. 14 (Plaintiffs' counsel's Motion to Remand with $2,889 fee demand.) These examples, coupled with GM's assessment after engaging with Plaintiffs' counsel that the case is unlikely to settle, show that

consideration of past and future attorney's fees in the amount in controversy is reasonable and supported by competent evidence.

And given Plaintiffs' counsel's penchant for prolonging litigation and seeking high fees for routine cases, it is reasonable to forecast that Plaintiffs' counsel will assert that they spent at least 15 hours on this case and demand at least $15,000 in attorney's fees, even if the case settles before trial. Adding this $15,000 to the actual damages and civil penalties results in an amount in controversy that far exceeds the jurisdictional threshold. *See Sandoval v. GM LLC*, No. 2:25-cv-06551-DSF-SSC, 2025 U.S. Dist. LEXIS 195478, at *5 (C.D. Cal. Sept. 15, 2025) (attorney's fees combined with damages sought caused "amount in controversy easily to exceed" the jurisdictional threshold.)

Therefore, by a preponderance of the evidence, the amount in controversy exceeds $75,000.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand should be denied.

Dated: May 28, 2026 SHOOK, HARDY & BACON L.L.P.

By: /s/ *Aubrey Kramer*
Rodrigo E. Salas
Kevin M. Fitch
Aubrey Kramer

Attorneys for Defendant
GENERAL MOTORS LLC

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendant General Motors LLC, certifies that this brief contains 6,256 words, which complies with the word limit set by Local Rule 11-6.1.

Dated: May 28, 2026 By: /s/ *Aubrey Kramer*
Aubrey Kramer

Attorney for Defendant
GENERAL MOTORS LLC